1
2
3
4
5
6
7
8         UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

11  THOMAS R. WOODSON,                    Case No.: 15cv1285 WQH (RBB)

12                          Plaintiff,     **REPORT AND**

13  v.                                     **RECOMMENDATION GRANTING**
                                           **IN PART AND DENYING IN PART**
14  R.N. ORTIZ et al,                      **DEFENDANTS' MOTION TO**
                                           **DISMISS PLAINTIFF'S**
15                         Defendants.     **COMPLAINT [ECF NO. 13]; ORDER**
                                           **DENYING [AMENDED] MOTION**
16                                         **FOR APPOINTMENT OF COUNSEL**
                                           **[ECF NO. 23]**
17

18

19        Plaintiff Thomas R. Woodson, a former state prisoner proceeding pro se and in

20  forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 on June 9, 2015 [ECF

21  Nos. 1, 3].  Woodson claims that Defendants Ortiz, Orduna, Kim, Stepke, Ball, Gutierrez,

22  and Dogonyaro ("Defendants") violated his rights by failing to treat an injury to his hand

23  in a timely manner while he was incarcerated at Calipatria State Prison.  (See Compl. 4-

24  12, ECF No. 1.)[1]  On October 27, 2015, Defendants filed a Motion to Dismiss Plaintiff's

25  Complaint [ECF No. 13].  Plaintiff filed an "Opposition Motion" on November 25, 2015

26  [ECF No. 15], which the Court construes as his opposition (the "Opposition").  After

27  _____

28  [1]  The Court will cite to documents as paginated on the electronic case filing system.

being given an extension of time [ECF No. 18], Defendants filed a Reply on December 10, 2015 [ECF No. 19].

Woodson additionally submitted a "Motion for Appointment of Counsel," which was filed nunc pro tunc to December 3, 2015 [ECF No. 21]. He submitted another document entitled "Motion for Appointment of Counsel," which was filed as an "[Amended] Motion for Appointment of Counsel" nunc pro tunc to January 29, 2016 [ECF No. 23]. This filing is identical to the original Motion for Appointment of Counsel, except that it bears a later date. (Compare Mot. Appointment Counsel 1-6, ECF No. 21, with [Am.] Mot. Appointment Counsel 1-6, ECF No. 23.) The amended motion supersedes the original Motion for Appointment of Counsel. Franklin v. Smalls, Civil No. 09cv1067 MMA(RBB), 2012 WL 5077630, at *1 (S.D. Cal. Oct. 18, 2012) (citations omitted) ("This second Motion to Compel is identical to Plaintiff's first Motion, with the exception of an added two-page memorandum of points and authorities. The Amended Motion to Compel supersedes the original.").

The Court has reviewed the Complaint and exhibits, the Motion to Dismiss, the Opposition, the Reply, as well as the Amended Motion for Appointment of Counsel. For the reasons discussed below, the Motion to Dismiss [ECF No. 13] should be **GRANTED in part and DENIED in part**, and the Amended Motion for Appointment of Counsel [ECF No. 23] is **DENIED**.

## I. FACTUAL BACKGROUND

The allegations in the Complaint arise from events that began in May of 2014 while Woodson was incarcerated at Calipatria State Prison. (Compl. 1, ECF No. 1.)[2] In total, Plaintiff asserts claims against seven Defendants in their individual capacities. (Id. at 1-11.)

//

//

_____

[2] Plaintiff is no longer incarcerated. (See Not. Address Change 1, ECF No. 24.)

1    **A.    Count One**

2         In count one, Woodson alleges violations of the Eighth Amendment and section

3    845.6 of the California Government Code for the failure of Defendants Kim, Ortiz,

4    Orduna, and Stepke to timely treat an injury to his hand.  (<u>Id.</u> at 4-11.)  Plaintiff contends

5    that he fractured a bone and dislocated another bone in his left hand on May 27, 2014,

6    causing him "serious pain and swelling."  (<u>Id.</u> at 4.)  Woodson insists he "immediately

7    submitted a Health Care Services request form" directly to prison staff following this

8    incident, but was not given immediate care.  (<u>Id.</u>)  Plaintiff explains he "verbally

9    informed [prison staff members] for several days that he was in excruciating pain and

10   needed to be seen by a doctor, showing the nurses his swollen and injured hand."  (<u>Id.</u>)

11   But it was not until June 3, 2014, that he was seen by Defendant Nurse Ortiz.  (<u>Id.</u>)

12   Plaintiff characterizes Ortiz as being "agitated and indifferent," stating that she "rolled

13   her eyes and sucked her teeth as Plaintiff showed her his swollen and deformed hand."

14   (<u>Id.</u>)

15        Woodson's hand was subsequently examined by several doctors.  (<u>Id.</u> at 5.)  His

16   hand was initially evaluated by Dr. Estock, who is not a party to this litigation.  (<u>Id.</u>)  Dr.

17   Estock ordered an x-ray of Plaintiff's hand, which Woodson argues "confirm[ed] a

18   serious medical need."  (<u>Id.</u>)  Dr. Estock also "ordered a temporary spica short arm

19   [splint] to be placed on Plaintiff's hand and wrist" and gave Woodson Tylenol.  (<u>Id.</u>)

20   Plaintiff next saw Dr. Foerster, also not a party to this litigation, on June 5, 2014.  (<u>Id.</u>)

21   Woodson states that Dr. Foerster "diagnosed Plaintiff's left thumb metecarpel [sic]

22   fracture, trapezium dislocation at dorsal base of metecarpal [sic] with ligament damage,"

23   and recommended immediate surgery.  (<u>Id.</u> (citing Compl. Ex. A).)  Last, Plaintiff was

24   seen by Defendant Dr. Kim on June 6, 2014.  (<u>Id.</u>)  Woodson told Dr. Kim that "he was

25   in constant pain and unable to sleep well for fear of rolling onto [his hand] or bumping it,

26   as it would send shock waves of acute pain up Plaintiff's arm and what felt like his entire

27   body."  (<u>Id.</u>)  Plaintiff explained the urgency of the situation to Defendant Kim, stating

28   that he "had been suffering with pain and discomfort for ten days as of that visit without

receiving the recommended treatment (surgery)." (Id. at 5-6.)  Woodson complains that Defendant Kim "simply scribbled some things down on a piece of paper and stoically dismissed Plaintiff without an adequate response or mere mention of scheduled date for surgery." (Id. at 6.)  Woodson also asserts that this doctor falsified the date that Plaintiff's x-ray was taken, and that the statement in Dr. Kim's report that Woodson had no definite identified fracture contradicts Dr. Foerster's findings, which "could have led to the denial of timely and adequate medical treatment." (Id. at 11.)

On several occasions following his appointment with Dr. Kim, Plaintiff attempted to ask prison staff about the waiting period for treatment.  (Id. at 6-8.)  Woodson first contends that nursing assistant Evans, who is not a party to this litigation, went to her superiors, Defendants Ortiz and Orduna, on Plaintiff's behalf.  (Id. at 6.)  Woodson asserts that these two Defendants ignored Evans's "attempts to inform them of Plaintiff's concerns and request for treatment." (Id.)  Woodson additionally indicates that Dr. Kim failed to respond to the inmate request form (CDCR 22) from Plaintiff dated June 12, 2014, where Woodson asked about the waiting period for surgery.  (Id. (citing Compl. Ex. B).)  On June 19, 2014, he submitted an emergency grievance appeal because he still had not been treated for his worsening injury.  (Id. at 6 (citing Compl. Ex. C).)

Woodson further complains that on June 30, 2014, he sent Defendant Ortiz an inmate request form and inquired as to the waiting period for surgery, but she never responded.  (Id. at 7 (citing Compl. Ex. C).)  On the same day, he asked Defendant Dr. Stepke about being scheduled for surgery.  (Id.)  In response, Dr. Stepke "shrugged his shoulders with apathy, stating, 'I don[']t do the scheduling.'"  (Id. (citing Compl. Ex. D).)  Woodson argues that Dr. Steptke conspired with the other Defendants to deny and delay Plaintiff's treatment, making his injury worse.  (Id. at 10.)  Woodson attempts to substantiate this claim by referencing his medical records:

> Dr. Stepke circled "Routine" on the initial Health Care Services Physician request for services document when the physician report of 6/5/14 clearly indicates urgency.  Upon further research Plaintiff found policy documentation that specifically states, patients "shall" be seen by the

4

physician within 24 hours (urgent), within fourteen (14) calendar days (Routine).  Dr. Stepke circling "routine" when this was an urgent situation can only be to cover up the fact that although Plaintiff submitted the CDCR 7362 medical request form directly into the hands of nursing staff the day of injury[,] Plaintiff was not seen by a physician until 7 or 8 days later.

(Id. at 10-11 (internal citations omitted).)  Also on June 30, 2014, Woodson submitted an inmate request form to Defendant Orduna stating that she had not processed his forms for off-site medical treatment.  (Id. at 7.)  Plaintiff indicates that in response, Nurse Orduna "blam[ed] the off-site specialist surgery schedule."  (Id. (citing Compl. Ex. E).)

Woodson received surgery on his hand on July 11, 2014, and describes that day as follows:

After 45 days of agony, pain and suffering, discomfort and inability to perform mundane . . . or intricate task[s] involving [Plaintiff's] left hand, on July 11, 2014 Plaintiff was transported to [Alvarado] Hospital for reconstructive surgery.  Plaintiff was quickly put under anesthesia for the procedure and never got a chance to talk with the specialist Bruce [Foerster] who performed the surgery about the delay and its effects.  On the van ride back to the institution the transportation officers told Plaintiff that, "everything didn't look good, at one point it looked as if there was an emergency."

(Id. at 8.)  Woodson asserts that in a follow-up appointment with Dr. Foerster, the doctor told him that "surgery for injuries such as Plaintiff's should take place sooner than later." (Id. at 9.)  Woodson interprets this statement from Dr. Foerster "as confirmation that the denial/delay of timely health care for his serious medical need . . . did in fact adversely affect Plaintiff."  (Id.)

Woodson concludes "that at every step of seeking adequate diagnosis and treatment for his serious medical needs he was met with deliberate indifference by prison medical staff and officials."  (Id. at 9-10.)  Plaintiff asserts that "[u]ndue denials, delays, runarounds, non-responses or apathetic deferring rendered treatment clearly [a] grossly inadequate response to [Plaintiff's] medical condition."  (Id. at 10.)  Woodson contends he "suffered prolonged pain and unnecessary suffering that medical officials were

continually made aware of and chose to unrecognize [sic]."  (<u>Id.</u> (citing Compl. Ex. I).)  Plaintiff argues that the actions by these Defendants exacerbated his condition, noting that his "thumb is permanently unstable, weak, stiff, with a loss of contour and after a year later still gives Plaintiff pain when trying to perform every day task[s].  Plaintiff has also suffered muscle atrophy with a noticeable size difference from his left hand and his right."  (<u>Id.</u>)

**B.    Count Two**

In count two, Woodson alleges that Defendants Gutierrez and Dogonyaro, both health care appeals coordinators, violated his First and Fourteenth Amendment rights.  (<u>Id.</u> at 12.)  As to Defendant Gutierrez, Plaintiff asserts that this Defendant harmed him by causing "spurious delays, rejections, [and] cancellations, obstructing Plaintiff's attempts to remedy his health care problem in a timely manner after knowledge of Plaintiff's [serious] medical need."  (<u>Id.</u>)  Woodson states a nearly identical allegation against Defendant Dogonyaro.  (<u>See</u> <u>id.</u>)  Plaintiff contends that the actions of both Defendants had a "chilling effect" on his First Amendment right to file a grievance.  (<u>Id.</u> at 3.)

**C.    Allegations Against Dr. Ball**

Woodson's allegations against Dr. Ball do not appear in count one or count two.  (<u>See</u> Compl. 4-12, ECF No. 1.)  Rather, they appear in the identification of parties on page two of the form complaint.  (<u>See</u> <u>id.</u> at 2.)  There, Plaintiff states that Dr. Ball "failed to exercise his/her supervisory liability [sic] after being notified of Plaintiff's serious medical need and callous indifference by subordinates.  He/she failed to respond to Plaintiff or remedy the wrong causing plaintiff prolonged pain and suffering and substantial risk of further harm."  (<u>Id.</u>)

Woodson seeks $30,000 in compensatory damages and $22,500 in punitive damages.  (<u>Id.</u> at 14.)

//

//

6

## II.  DISCUSSION

**A.**   **Defendants' Motion to Dismiss**

    **1.**   **Legal standards**

        **a.**   **Standards applicable to pro se litigants**

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (citation omitted).  In giving liberal interpretation to a pro se civil rights complaint, courts "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (citation omitted) (internal quotation marks omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se civil rights complaint may be dismissed, the court is required to provide the plaintiff with a statement explaining the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24 (citation omitted).  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

//

1

### b.     Motions to dismiss for failure to state a claim

2      A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

3   Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v.

4   Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999).  A complaint must be dismissed if

5   it does not contain "enough facts to state a claim to relief that is plausible on its face."

6   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

7   plausibility when the plaintiff pleads factual content that allows the court to draw the

8   reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

9   Iqbal, 556 U.S. 662, 678 (2009).  The court accepts as true all material allegations in the

10   complaint, as well as reasonable inferences to be drawn from them, and construes the

11   complaint in the light most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish,

12   382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192

13   (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.

14   1995); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (citation omitted).

15      The court does not look at whether the "plaintiff will ultimately prevail but

16   whether the claimant is entitled to offer evidence to support the claims."  Scheuer v.

17   Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds, Davis v. Scherer, 468 U.S.

18   183 (1984); see Bell Atlantic Corp., 550 U.S. at 563 n.8.  A dismissal under Rule

19   12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence

20   of sufficient facts alleged to support a cognizable legal theory."  Navarro v. Block, 250

21   F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

22   699 (9th Cir. 1988)).

23      The court need not accept conclusory allegations in the complaint as true; rather, it

24   must "examine whether [they] follow from the description of facts as alleged by the

25   plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted);

26   see also Cholla Ready Mix, Inc., 382 F.3d at 973 (stating that on a Rule 12(b)(6) motion,

27   a court "is not required to accept legal conclusions cast in the form of factual allegations

28   if those conclusions cannot reasonably be drawn from the facts alleged" (quoting Clegg

8

v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994))).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings.  Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).  "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., Inc., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).

### c.    Stating a claim under 42 U.S.C. § 1983

To state a claim under § 1983, the plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2012); Shah v. Cty. of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

### d.    Deliberate indifference to serious medical needs

Deliberate indifference to medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Deliberate indifference to serious medical needs consists of two requirements, one objective and the other subjective.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Lopez, 203 F.3d at 1132–33 (quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.

9

1995)).  The plaintiff must first establish a "serious medical need" by showing that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991)).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent."  Id. (citing McGuckin, 974 F.2d at 1060).

With regard to the objective requirement, "serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F.3d at 1131 (alteration in original) (quoting McGuckin, 974 F.2d at 1059–60).

Under the subjective element, prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay or intentionally interfere with medical treatment."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Inadequate treatment due to medical malpractice, negligence, or even gross negligence, does not rise to the level of a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle, 429 U.S. at 105–06); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

A defendant's acts or omissions will not amount to a constitutional violation unless there is reckless disregard of a risk of serious harm to the prisoner.  Farmer, 511 U.S. at 836.  The inmate must allege that the defendant purposefully ignored or failed to respond to his pain or medical needs; an inadvertent failure to provide adequate care does not constitute a violation.  Estelle, 429 U.S. at 105–06.  The official must have "know[n] that [the] inmate[ ] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

//

### e.      **California Government Code section 845.6**

"By statute, California imposes a duty on government employees who have custody of prisoners to provide medical care to the prisoners when needed." Nobles v. U.S. Customs, Civil No. 07cv1231 WQH(RBB), 2008 WL 1944106, at *2 (S.D. Cal. May 2, 2008) (citing Cal. Gov't Code § 845.6 (West 2012)).  California Government Code section 845.6 provides as follows:

> [E]xcept as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Gov't § 845.6.  To state a claim under this section, "a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." Jett, 439 F.3d at 1099 (citing Gov't § 845.6)).  But "[l]iability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." Watson v. State of California, 21 Cal. App. 4th 836, 841, 26 Cal. Rptr. 2d 262, 265 (1993) (citations omitted).

### 2.      **Discussion**

In the Motion to Dismiss, Defendants assert that there was no unreasonable delay in Plaintiff's medical care.  (Mot. Dismiss 10, ECF No. 13.)  They argue that despite his contention that he was not seen by medical staff until June 3, 2014, Woodson was actually first seen on May 30, 2014.  (Id. at 7 (citations omitted).)  Defendants further contend that surgery did not need to be performed on an emergency basis and that Plaintiff's deliberate indifference claim is based on his subjective concerns, explaining that Woodson was given pain mediation and a brace while waiting for surgery.  (Id. at 13.)  They conclude all claims should be dismissed without leave to amend.  (Id. at 21.)

//

//

### a.   Dr. Kim

Addressing the allegations against him, Dr. Kim contends that nothing in Dr. Foerster's report indicates that emergency surgery should be performed.  (Id. at 14.) Furthermore, Plaintiff's argument that his delay in having surgery amounted to deliberate indifference is contradicted by his medical records.  (Id. at 15.)  Defendant argues that Woodson's allegations are conclusory, reasoning that even if there were a need for immediate surgery, Plaintiff has not alleged that Dr. Kim controlled scheduling for the surgery.  (Id.)  He asserts that Woodson has not alleged a purposeful act by Dr. Kim to deny Plaintiff necessary medical care.  (Id.)  Defendant explains that Woodson was already being treated for his injured hand with a splint and medication when he saw Dr. Kim on June 6, 2014.  (Id.)  And the doctor's actions merely amounted to not giving Plaintiff the immediate treatment he wanted, which is not actionable.  (Id. at 15-16.)  Dr. Kim moreover disputes that he falsified documents.  (See id. at 16 (citing Compl. 11, ECF No. 1).)

Woodson responds in the Opposition that he only saw Dr. Kim once, on June 6, 2014.  (Opp'n 4, ECF No. 15.)  The day before, on June 5, 2014, Dr. Foerster had recommended immediate surgery.  (Id. at 5 (citing Compl. Ex. A, at 5, ECF No. 15).) Plaintiff asserts that during his visit with Dr. Kim, the doctor did not seem interested and did not provide Woodson with any information or response.  (Id.)  Plaintiff advised Dr. Kim of Woodson's injury, "[from] which an inference could be drawn that a substantial risk of harm and further risk of harm existed."  (Id. at 4-5.)  Plaintiff argues that the Defendant disregarded a risk to his health and disputes the assertion that his arguments are conclusory.  (Id. at 5.)  Plaintiff additionally argues that Defendants violated California Government Code section 845.6, reasoning that there was a delay of seven days between notice of the injury and his examination, and thirty-eight days from his "telemedicine consultation" to his surgery.  (Id. at 6.)  Woodson moreover complains that he was not given pain medication for seven days, and when he was given Ibuprofen, this medication was only administered for a week and was ineffective.  (Id. at 7.)

The Reply does not distinguish among the Defendants or address the allegations against Dr. Kim in depth.  (See Reply 1-6, ECF No. 19.)  Instead, the Defendants maintain that Plaintiff only waited three days to be seen after his initial injury, and they dispute as unfounded the allegation that falsified medical records show that Woodson was seen on May 30, 2014.  (Id. at 2-3.)  Defendants further respond that Woodson was actually prescribed Tylenol with codeine, not just regular Tylenol, as Plaintiff alleges.  (Id. at 3-4.)  They deny that Woodson suffered harm resulting from the delay in surgery, reasoning instead that he will still experience difficulties with his thumb despite undergoing surgery and nothing indicates that surgery was needed on an emergency basis.  (Id. at 4-5.)

As a preliminary matter, Plaintiff's allegation that Dr. Kim falsified the date that Plaintiff's x-ray was taken, (see Compl. 11, ECF No. 1), is wholly conclusory.  Woodson alleges insufficient facts to support this conclusion.  See Cholla Ready Mix, Inc., 382 F.3d at 973.  Nevertheless, "to establish a claim of deliberate indifference arising from a delay in treatment, a plaintiff must show that the delay was harmful."  Goolsby v. Ridge, Civil No. 09cv02654–RBB, 2012 WL 1068881, at *16 (S.D. Cal. Mar. 29, 2012) (citing Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989)).  "[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . ."  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (citing Estelle, 429 U.S. at 106).  Rather, a prisoner has "no claim for deliberate medical indifference unless the denial was harmful."  Id. (citing Estelle, 429 U.S. at 106).  The prisoner does not need to show that the harm was substantial, although doing so would provide support for his claim of deliberate indifference.  Jett, 439 F.3d at 1096 (citation omitted).

Here, Woodson contends that after explaining the urgency of his situation to Dr. Kim, the doctor dismissed Plaintiff without mentioning when surgery would be scheduled, and failed to respond to his subsequent inquiries regarding the waiting period

1  for surgery.  (Compl. 5-6, ECF No. 1.)  Woodson additionally asserts that Dr. Kim's

2  statement that there was no "definite facture" contradicts Dr. Foerster's report, which

3  Plaintiff argues could have delayed his treatment.  (Id. at 11.)  Plaintiff maintains that

4  these acts caused him several weeks of agony and pain.  (Id. at 8.)

5       Liberally construing Woodson's allegations against Defendant Kim as this Court

6  must, see Karim-Panahi, 839 F.2d at 623, Plaintiff has alleged a medical indifference

7  toward him by Dr. Kim, which caused him a harmful delay in obtaining surgery.  See

8  Shapley, 766 F.2d at 407 (citing Estelle, 429 U.S. at 106).  This is sufficient to allege a

9  claim for deliberate indifference under the Eighth Amendment.  Cf. Evans v. Cty. of San

10  Diego, No. 06 CV 877 JM (RBB), 2009 WL 3709183, at *14 (S.D. Cal. Nov. 3, 2009)

11  (adopting recommendation that defendants' motion for summary judgment be granted

12  where an inmate "received regular medical care while in the custody of the County, and

13  any delay in surgery did not cause him harm").  As a result, Defendant Kim's Motion to

14  Dismiss Woodson's Eighth Amendment claim against him should be **DENIED**.

15       Plaintiff has not, however, sufficiently stated a claim under California Government

16  Code section 845.6 against Dr. Kim.  Although Defendants do not address Woodson's

17  section 845.6 claim in the Motion to Dismiss, (see Mot. Dismiss 7-20, ECF No. 13), this

18  Court is obligated to sua sponte review this cause of action to assess whether it states a

19  claim for relief, see Alve v. Edwards, Civil No. 10–1389 DMS (POR), 2010 WL

20  4809339, at *1 (S.D. Cal. Nov. 19, 2010) ("The Court must sua sponte dismiss prisoner

21  complaints, or any portions thereof, which are frivolous, malicious, or fail to state a claim

22  upon which relief may be granted." (citing 28 U.S.C.A. § 1915A(b) (West 2006);

23  Resnick v. Hayes, 213 F.3d 443, 446–47 (9th Cir. 2000))).

24       Here, other than mentioning this code section at the top of every page in count one

25  of his Complaint, Plaintiff does not address the requirements for stating a claim under

26  section 845.6.  (See Compl. 4-12, ECF No. 1.)  As discussed above, there are three

27  elements under this code section, see Jett, 439 F.3d at 1099 (citing Gov't § 845.6)), but

28  the Court may not supply missing elements in liberally construing Woodson's Complaint,

see Ivey, 673 F.2d at 268.  Accordingly, this claim is insufficiently pleaded and should be **DISMISSED**.  Courts must give a plaintiff leave to amend a pleading unless he could not possibly cure the claim by asserting other facts.  Lopez, 203 F.3d at 1127.  A plaintiff should not be granted the opportunity to amend when doing so would be futile.  Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009).  Because it is unclear whether Woodson could amend his pleading to include further facts to state a claim under section 845.6 against Dr. Kim, he should be given leave to amend his section 845.6 claim against this Defendant.

### b.    Nurse Ortiz and Nurse Orduna

In the Motion to Dismiss, Defendants Ortiz and Orduna contend that the allegations against them are conclusory.  (Mot. Dismiss 17, ECF No. 13.)  They reason that "[t]here is no allegation that either Nurse Ortiz [or] Nurse Orduna had any control over scheduling plaintiff's surgery, or were otherwise involved in providing care for his thumb injury after Nurse Ortiz saw plaintiff on his initial visit for medical treatment on June 3, 2014."  (Id.)  Defendants conclude that Plaintiff has not met the standard for stating a claim against them under the Eighth Amendment.  (See id. at 17-18.)

Woodson responds in the Opposition that Defendants Ortiz and Orduna's actions were deliberately indifferent and "led to prolonged pain and suffering."  (Opp'n 8, ECF No. 15.)  Plaintiff explains that the failure of these Defendants to process his paperwork denied and delayed his treatment "and has extended the pain suffering and risk of further harm."  (Id. at 8-9 (citing Compl. Exs. C, D, E, G, H, ECF No. 1).)  As with Dr. Kim, Defendants Ortiz and Orduna do not discuss Woodson's allegations against them in depth in the Reply.  (See Reply 1-6, ECF No. 19.)

Like Plaintiff's allegations of deliberate indifference against Dr. Kim, Woodson has sufficiently stated a claim for deliberate indifference against Defendants Ortiz and Orduna.  According to Plaintiff, these Defendants ignored his requests for treatment, (Compl. 6-7, ECF No. 1), which caused him weeks of pain and suffering, (id. at 8.)  This is sufficient to state a claim for deliberate indifference.  See Shapley, 766 F.2d at 407

15

(citing <u>Estelle</u>, 429 U.S. at 106).  Accordingly, Defendants' Motion to Dismiss Woodson's Eighth Amendment claims against Nurses Ortiz and Orduna should be **DENIED**.

Woodson has not, however, adequately stated a claim that these Defendants violated California Government Code section 845.6.  As mentioned, nowhere in the Complaint does Plaintiff address the requirements for stating a claim under this code section.  (<u>See</u> Compl. 4-12, ECF No. 1.)  The Court cannot supply these requirements for Woodson, <u>see Ivey</u>, 673 F.2d at 268, and for this reason this claim should be **DISMISSED**.  Because it is not clear whether Plaintiff could amend his pleadings to include facts sufficient to state a claim under section 845.6 against these Defendants, he should be given leave to amend this claim.  <u>See</u> <u>Lopez</u>, 203 F.3d at 1127.

### c.    Dr. Stepke

Addressing the allegations against Dr. Stepke, this Defendant argues that despite the contention that he circled "routine" on a medical form dated June 2, 2014, Plaintiff was seen by medical staff the following day.  (Mot. Dismiss 18, ECF No. 13.)  The doctor states that Woodson does not allege any purposeful actions by this Defendant to deny Plaintiff necessary care.  (<u>Id.</u>)  Dr. Stepke argues that his involvement was minimal and does not provide a basis for liability:

> [T]he only allegation that Dr. Stepke was involved in plaintiff's medical care is in ordering a follow up appointment, which occurred the next day.  That Dr. Stepke did not order surgery done on an emergency basis, establishes only that that [sic] Dr. Stepke did not provide the immediate treatment that plaintiff wanted.

(<u>Id.</u> at 18.)  This Defendant characterizes Woodson's complaint against him as one for not pursuing alternative treatment options, which Dr. Stepke argues does not amount to deliberate indifference.  (<u>Id.</u> at 18-19 (citing <u>Estelle</u>, 429 U.S. at 107).)

In the Opposition, Plaintiff reiterates that Dr. Stepke's deliberate indifference was manifested by the doctor's June 24, 2014 statement to Woodson regarding scheduling.  (Opp'n 9-10, ECF No. 15 (citing Compl. Ex. D, at 36, ECF No. 1).)  Plaintiff disputes

that he saw Dr. Stepke on June 2, 2014, or that events on that day are the basis for his claim against the doctor.  (Id. at 10.)  Instead, Woodson explains that Dr. Stepke was aware of Plaintiff's pain but acted apathetically toward him.  (Id.)  Woodson asserts that this "equates to an 'I [don't] care attitude.'"  (Id. (citing Farmer, 511 U.S. at 835, 837).)  The Reply does not discuss Plaintiff's allegations against Dr. Stepke, other than to reiterate that the statement to Woodson regarding scheduling does not state a claim for relief.  (Reply 5-6, ECF No. 19.)

Having reviewed the Complaint, it is unclear to the Court when Plaintiff saw Dr. Stepke for his evaluation.  The "Health Care Services Physician Request for Services" form completed by this Defendant contains multiple dates, but none are June 2, 2014, the date Dr. Stepke appears to allege that Woodson had his consultation with the doctor.  (See Compl. Ex. J, at 63, ECF No. 1.)  Rather, it appears that Dr. Stepke completed his "Notification of Diagnostic Test Results" on June 2, 2014.  (See id. Ex. K, at 79.)  Neither party does an adequate job in their briefing to address what day Plaintiff saw Dr. Stepke, but this factual dispute is not one the Court needs to resolve on Defendant's Motion to Dismiss.

In reviewing Woodson's Complaint, the Court accepts as true Plaintiff's allegations and construes the Complaint in the light most favorable to him.  See Cholla Ready Mix, Inc., 382 F.3d at 973 (citing Karam, 352 F.3d at 1192); Parks Sch. of Bus., Inc., 51 F.3d at 1484; NL Indus., Inc., 792 F.2d at 898 (citation omitted).  Here, the crux of Woodson's allegations against Dr. Stepke is that by circling the words "routine" instead of "urgent" on the request for services document, this Defendant prevented Plaintiff from receiving the immediate care that he needed until seven or eight days later.  (See Compl. 10-11, ECF No. 1.)  This is sufficient to state a claim under the Eighth Amendment, because Woodson alleges he had a serious medical need, Jett, 439 F.3d at 1096, and that Dr. Stepke delayed his medical treatment for this need.  Hutchinson, 838 F.2d at 394.  Accordingly, Defendant's Motion to Dismiss should be **DENIED** as to Plaintiff's deliberate indifference claim against Dr. Stepke.

1  For the reasons outlined above, Woodson again has not stated a claim under

2  California Government Code section 845.6.  Because it is unclear whether Woodson

3  could amend his Complaint to include enough facts to state a claim against Dr. Stepke

4  under section 845.6, he should be given leave to amend.  See Lopez, 203 F.3d at 1127.

5      **d.   Dr. Ball**

6  In the Motion to Dismiss, Defendant Dr. Ball contends that Plaintiff's allegations

7  against him are vague and conclusory.  (Mot. Dismiss 19, ECF No. 13.)  He alleges that

8  the allegations "fail to provide the necessary elements to allege supervisor liability under

9  section 1983."  (Id.)  Woodson responds that Dr. Ball was notified of Plaintiff's serious

10  medical needs and the delay of care by Dr. Foerster.  (Opp'n 10, ECF No. 15.)  Plaintiff

11  explains that he tried to notify Dr. Ball of his medical needs, but received no response.

12  (Id. at 10-11.)  In the Reply, Dr. Ball does not directly address the allegations against

13  him.  (See Reply 1-6, ECF No. 19.)

14  "A supervisor is only liable for constitutional violations of his subordinates if the

15  supervisor participated in or directed the violations, or knew of the violations and failed

16  to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  But there is

17  no vicarious liability under § 1983.  Id. (citing Ybarra v. Reno Thunderbird Mobile Home

18  Village, 723 F.2d 675, 680–81 (9th Cir. 1984)).

19  Woodson's allegations against Dr. Ball are conclusory and vague.  Although

20  Plaintiff states that this Defendant failed to respond to Woodson's concerns after being

21  notified of them, (see Compl. 2, ECF No. 1), Plaintiff does not allege any specific facts

22  regarding his interactions with Dr. Ball.  Without more from Woodson, his allegations

23  against Dr. Ball are insufficient to survive a motion to dismiss.  See Ivey, 673 F.2d at

24  268; Jones, 733 F.2d at 649.  Accordingly, the Motion to Dismiss should be **GRANTED**

25  as to Plaintiff's claim against Dr. Ball.  Because it is unclear whether Woodson would be

26  able to amend his Complaint to include sufficient facts to state a claim against Dr. Ball,

27  he should be given leave to amend.  See Lopez, 203 F.3d at 1127.

28  //

### e.    Defendants Gutierrez and Dogonyaro

Finally, Defendants Gutierrez and Dogonyaro assert in the Motion to Dismiss that Plaintiff's claims against them are conclusory and vague.  (Mot. Dismiss 19, ECF No. 13.)  Defendants explain that "[w]hile the Exhibits include several letters from both L. Gutierrez and J. Dogonyaro responding to various medical appeals, plaintiff makes no factual allegations regarding the content of the letters nor any specific allegations of wrongful conduct against L. Gutierrez and J. Dogonyaro."  (Id. at 19-20 (citing Compl. Ex. re: Exhaustion, at 72, 76, 77, 82, 95, 96, 98, 101, ECF No. 1).)  Defendants conclude that the allegations against them are insufficient to show deliberate indifference.  (Id. at 20.)

Woodson responds that Defendants Gutierrez and Dogonyaro violated his First and Fourteenth Amendment rights "by creating barriers by way of spurious delays, rejections, [and] cancellations to Plaintiff's attempts to file grievance appeal seeking aide and help to receive medical treatment."  (Opp'n 12, ECF No. 15.)  Woodson contends that these Defendants attempted to chill his due process right to file a grievance and exhaust his remedies.  (Id. (citing Compl. Ex. re: Exhaustion, at 71-100, ECF No. 1).)  Defendants do not directly address the allegations against Defendants Gutierrez and Dogonyaro in the Reply.  (See Reply 1-6, ECF No. 19.)

Inmates have a First Amendment right to meaningful access to the courts, which includes the right to invoke established prison grievance procedures.  Trueman v. State, No. CV 09–2179–PHX–RCB (DKD), 2010 U.S. Dist. LEXIS 67847, at *12 (D. Ariz. June 15, 2010) (citing Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005)). Government officials may not retaliate against prisoners who exercise their First Amendment rights.  Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); see also Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (stating that suspension of permits because of Soranno's public criticism of defendants is a First Amendment violation).

//

By contrast, a plaintiff may not advance a substantive due process claim if "a particular Amendment 'provides an explicit textual source of constitutional protection'" against government misconduct.  Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Courts may limit the inquiry to the amendment that more specifically addresses a plaintiff's claim in lieu of general notions of substantive due process.  See id. at 286 (Kennedy & Thomas, JJ., concurring) (refraining from evaluating petitioner's due process claim under § 1983 because his allegations could be addressed under the state's malicious prosecution law); Graham, 490 U.S. at 395 n.10 ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment." (citing Whitley v. Albers, 475 U.S. 312, 327 (1986))).

Here, as a preliminary matter, Defendants Gutierrez and Dogonyaro are incorrect to analyze Plaintiff's claims against them under the Eighth Amendment.  (See Mot. Dismiss 20, ECF No. 13.)  Rather, Woodson asserts his claims against these Defendants under the First and Fourteenth Amendments.  (See Compl. 12, ECF No. 1.)  Nevertheless, the claims against these Defendants are subject to dismissal.  As to Plaintiff's substantive due process claim, the First Amendment already provides protections for Woodson regarding the alleged misconduct by Gutierrez and Dogonyaro.  See Trueman, 2010 U.S. Dist. LEXIS 67847, at *12 (citing Rhodes, 408 F.3d at 567).  This protection precludes Plaintiff from pursuing a substantive due process claim against these Defendants.  See Albright, 510 U.S. at 273 (Rehnquist, C.J., for plurality) (quoting Graham, 490 U.S. at 395).  Accordingly, Plaintiff's Fourteenth Amendment claim against Defendants Gutierrez and Dogonyaro should be **DISMISSED** without leave to amend.  See Easter v. CDC, 694 F. Supp. 2d 1177, 1187 (S.D. Cal. 2010) (citations omitted) (finding that a plaintiff's due process claim was preempted by the Eighth Amendment where the plaintiff "attempted to raise a claim under the Eighth and Fourteenth Amendments based //

on the same conduct by the Defendants," as "the Eighth Amendment provides an explicit source of protection from the type of conduct Plaintiff alleges[]").

Although Plaintiff attaches several pages of correspondence with these Defendants as exhibits to his Complaint, (see Compl. Ex. re: Exhaustion, at 71-103, ECF No. 1), Woodson does not identify the specific conduct by these Defendants that he believes violated the First Amendment.  (See Compl. 12.)  Plaintiff's First Amendment claim against these Defendants is conclusory and should be **DISMISSED**.  See Ramirez v. Giurbino, No. 10CV1292-WQH MDD, 2011 WL 2669484, at *4 (S.D. Cal. May 24, 2011) (citation omitted) ("While Plaintiff asserts in his Reply that the prison regulations regarding validation of gang members violates the First Amendment, this mere conclusory statement is insufficient to survive Defendants' Motion to Dismiss.").  As it is not clear whether Woodson could amend his Complaint to include enough facts to state a First Amendment claim against these Defendants, he should be given leave to amend. See Lopez, 203 F.3d at 1127.

## B.  **Plaintiff's Request for Appointment of Counsel**

On December 15, 2015, Woodson filed a Motion for Appointment of Counsel [ECF No. 21].  While his motion was pending, on February 3, 2016, Plaintiff filed a second motion requesting the appointment of counsel.  (See [Am.] Mot. Appointment Counsel 1-6, ECF No. 23.)  The Court will address Woodson's latest filing, which supersedes his original Motion for Appointment of Counsel.  See Franklin, 2012 WL 5077630, at *1.

### 1.  **Legal standard**

The court may request an attorney to represent any person unable to afford counsel."  28 U.S.C.A. § 1915(e)(1) (West 2006).  But "it is well-established that there is generally no constitutional right to counsel in civil cases."  United States v. Sardone, 94 F.3d 1233, 1236 (9th Cir. 1996) (citations omitted).  There is also no constitutional right to appointed counsel to pursue a § 1983 claim.  Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)),

partially overruled on other grounds by 154 F.3d 952 (9th Cir. 1998).  Federal courts do not have the authority "to make coercive appointments of counsel."  Mallard v. U.S. Dist. Court, 490 U.S. 296, 310 (1989) (discussing § 1915(d)).

Nevertheless, district courts have discretion, pursuant to 28 U.S.C. § 1915(e)(1), to request attorney representation for indigent civil litigants upon a showing of exceptional circumstances.  See Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004) (citing Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984)).  "A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'"  Id. (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)).  "'Neither of these factors is dispositive and both must be viewed together before reaching a decision.'"  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991) (quoting Wilborn, 789 F.2d at 1331).  When examining a plaintiff's ability to proceed pro se, courts generally require, as a threshold matter, the plaintiff to show that (1) he is indigent, and (2) he "has made a reasonably diligent effort to secure counsel."  Bailey v. Lawford, 835 F. Supp. 550, 552 (S.D. Cal. 1993); see Cota v. Scribner, Case No. 09cv2507-AJB (BLM), 2012 U.S. Dist. LEXIS 20460, at *2–3 (S.D. Cal. Feb. 16, 2012).

### 2.   Discussion

#### a.   Likelihood of Woodson's success on the merits

To receive court-appointed counsel, Plaintiff must present a nonfrivolous claim that is likely to succeed on the merits.  Wilborn, 789 F.2d at 1331.  Woodson's Complaint purports to allege causes of action arising under the First, Eighth, and Fourteenth Amendments of the Constitution, as well as section 845.6 of the California Government Code.  (See Compl. 4-12, ECF No. 1.)

As discussed above, Plaintiff has sufficiently stated claims under the Eighth Amendment against Defendants Kim, Ortiz, Orduna, and Stepke.  Although the Court recommends that Defendants' Motion to Dismiss Woodson's deliberate indifference

claims against these Defendants be denied, it is too early to determine the likelihood of Plaintiff's success on the merits on these claims.  Without more, it is not certain whether any of Woodson's causes of action will survive summary judgment.  See Harris v. Duc, CASE NO. S CIV 06-2138 DOC, 2009 U.S. Dist. LEXIS 68786, at *10 (E.D. Cal. July 21, 2009) (denying motion to appoint counsel due to insufficient information to assess likelihood of success on merits); see also Bailey, 835 F. Supp. at 552 (same).  This factor does not support his request for an appointed lawyer.

### b.   Plaintiff's ability to proceed without counsel

To be entitled to appointed counsel, Woodson must also show he is unable to effectively litigate the case pro se in light of the complexity of the issues involved.  See Wilborn, 789 F.2d at 1331.  Courts have required that "indigent plaintiffs make a reasonably diligent effort to secure counsel as a prerequisite to the court's appointing counsel for them."  Bailey, 835 F. Supp. at 552.

In the Amended Motion for Appointment of Counsel, Plaintiff indicates that he cannot afford an attorney and that "[h]e has requested leave to proceed in forma pauperis."  ([Am.] Mot. Appointment Counsel 1, ECF No. 23.)  Woodson additionally indicates that he "has made repeated efforts to obtain a lawyer," (id. at 2), and he attached to his amended motion a letter from a law firm declining Plaintiff's request for legal assistance, (id. at 3.)  As Woodson has shown both that he is indigent and that he has made efforts to obtain representation, he has met the threshold requirements for obtaining appointed counsel.  Bailey, 835 F. Supp. at 552; see Cota, 2012 U.S. Dist. LEXIS 20460, at *2–3.

Plaintiff makes two other arguments as to why he should be appointed counsel.  (See [Am.] Mot. Appointment Counsel 1-2, ECF No. 23.)  First, Woodson argues that his incarceration will inhibit his ability to litigate.  (Id. at 1.)  Plaintiff reasons that he "has limited access to the law library."  (Id. at 1-2.)  But this argument is contradicted by Woodson's subsequent notice to the Court that his address has changed [ECF No. 24].  In light of this notice, it appears that Plaintiff is no longer incarcerated, (see Not. Address

Change 1, ECF No. 24), undermining the argument that his imprisonment will interfere with his ability to litigate.

But even if Woodson were still incarcerated, he has not demonstrated that he is, or will be, denied "reasonable" access to the law library.  See Lindquist v. Idaho State Bd. of Corr., 776 F.2d 851, 858 (9th Cir. 1985).  "[T]he Constitution does not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." Id. (citation omitted).  Plaintiff has not shown that he does not have reasonable access to a law library or other means of conducting legal research, or that he is subjected to burdens beyond those ordinarily experienced by pro se plaintiffs.

Second, Plaintiff contends that "[t]he issues involved in this case are complex, and will require significant research and investigation."  ([Am.] Mot. Appointment Counsel 1, ECF No. 23.)  Woodson states that he has "limited Knowledge of the law" and that "[a] trial in this case will likely involve conflicting testimony[.]"  (Id. at 2.)  He concludes that "counsel would better enable Plaintiff to present evidence and cross examine witnesses." (Id.)  Yet, Woodson is only entitled to appointed counsel if he can show "that because of the complexity of the claims[,] he [is] unable to articulate his positions." Rand, 113 F.3d at 1525.  Plaintiff has sufficiently alleged his claims in the Complaint [ECF No. 1]. There, Woodson recited the facts underlying his claims against multiple Defendants.  See Agyeman, 390 F.3d at 1103 (explaining that a finding of exceptional circumstances justifying appointment of counsel requires an evaluation of plaintiff's ability to articulate his claims); Pough v. Almager, CASE NO. 08cv1498 JM(RBB), 2010 U.S. Dist. LEXIS 51782, at *1-3 (S.D. Cal. May 26, 2010) (finding no exceptional circumstance due to factual complexity because plaintiff grasped "the legal issues involved" and was able to "adequately set[] forth a factual basis for his claims"); Shields v. Davis, No. C 07-0157 RMW (PR), 2008 U.S. Dist. LEXIS 90687, at *2-3 (N.D. Cal. Oct. 22, 2008) (denying motion for appointment of counsel because the case was "not particularly complex"). //

Further, among other filings in this case, Plaintiff has filed a motion for leave to proceed in forma pauperis, an Opposition to Defendants' Motion to Dismiss, and two motions requesting appointment of counsel [ECF Nos. 2, 15, 21, 23]. Woodson has proven able to adequately represent himself. See Plummer v. Grimes, 87 F.3d 1032, 1033 (8th Cir. 1996) (concluding that the district court did not abuse its discretion in denying plaintiff counsel, in part because plaintiff adequately filed a complaint and other pretrial materials); Harris, 2009 U.S. Dist. LEXIS 68786, at *11-13 (finding no exceptional circumstances, in part, because plaintiff was able to submit adequate documentation and motion work).

Accordingly, Plaintiff has failed to demonstrate exceptional circumstances, including that he is likely to succeed on the merits and that he is unable to represent himself (beyond the ordinary burdens encountered by persons representing themselves). As a result, Woodson's Amended Motion for Appointment of Counsel is **DENIED** without prejudice.

## III.  CONCLUSION AND RECOMMENDATION

Defendants' Motion to Dismiss Woodson's Eighth Amendment claims against Defendants Kim, Ortiz, Orduna, and Stepke should be **DENIED**, but Plaintiff's California Government Code section 845.6 claims against these Defendants should be **DISMISSED** with leave to amend. Defendant Dr. Ball's Motion to Dismiss Woodson's conclusory Eighth Amendment claim against him should be **GRANTED** with leave to amend. Defendants Gutierrez and Dogonyaro's Motion to Dismiss Plaintiff's Fourteenth Amendment claim against them should be **GRANTED** without leave to amend. Their motion to dismiss Woodson's First Amendment claims against them should be **GRANTED** with leave to amend.

Plaintiff's Amended Motion for Appointment of Counsel is **DENIED** without prejudice. The Clerk of Court is directed to terminate Woodson's Motion for Appointment of Counsel [ECF No. 21] because it has been superseded by Plaintiff's Amended Motion for Appointment of Counsel [ECF No. 23].

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before May 6, 2016.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before May 20, 2016.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)

IT IS SO ORDERED.


DATED:  April 8, 2016

Hon. Ruben B. Brooks
United States Magistrate Judge

cc:    Judge Hayes
       All Parties of Record